# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    v.                                                 **Case No. 14-CR-240**

**WILLIE MURPHY**
        **Defendant.**

## DECISION AND ORDER

Defendant Willie Murphy moves to withdraw his guilty plea to possession of ammunition as a felon. I held a hearing on the motion, which I now deny, as defendant fails to present a fair and just reason.

## I. FACTS AND BACKGROUND

The government charged defendant with possession of a firearm and ammunition as a felon (count one) and possession of marijuana with intent to distribute (count two). On December 14, 2015, defendant pled guilty to count one. The plea agreement set forth the following factual basis:

> In April 2014, a confidential informant (hereinafter "CI") told Milwaukee police officers that Willie Murphy sold marijuana out of Apartment 7 at XXXX W. Appleton Ave. in Milwaukee, WI. The CI stated the CI picked up marijuana from Murphy at the apartment on numerous occasions, and had just purchased over a half pound of mid to high-grade marijuana from Murphy. On April 15, 2014, a search warrant was obtained for the apartment.
>
> On April 17, 2014, Milwaukee police officers went to execute the search warrant. Officers ran into Murphy exiting Apartment 7. Murphy told officers that he stayed at Apartment 7, but that no one was currently at home. Murphy then left the building. Next, Officers knocked on Murphy's apartment door, and S.R. allowed them to enter. During the subsequent search, officers recovered the following items.

> In Murphy's bedroom, officers found 474.45 grams of marijuana; numerous plastic baggies; a digital scale; a .22 caliber German Sport Gun extended magazine; and a Remington .22 caliber bullet. The marijuana and the .22 caliber bullet were both in the closet stored in a black plastic bag with "Buckle" imprinted on it. A latent print recovered from the bag was identified as Murphy's. Multiple identifiers for Murphy linking him to the address were also recovered. Murphy now admits possessing the ammunition and the marijuana found in his bedroom on April 17, 2014.
>
> In the bathroom, officers found a loaded German Sports Guns, model GSG-5PK, .22 caliber pistol, bearing serial number A289084, with an extended magazine; a loaded Colt, model King Cobra, .357 revolver; and a box of .357 ammunition. The extended magazine recovered from Murphy's bedroom was also manufactured by German Sport Guns and fit the German Sport Gun found in the bathroom.
>
> On April 21, 2014, Murphy was arrested. He has several prior felony convictions which all remain unreversed. Additionally, the Bureau of Alcohol, Tobacco and Firearms determined the German Sport Gun found in the bathroom, and the .22 caliber Remington bullet found in the bedroom closet were both manufactured outside the state of Wisconsin. As such, they must have traveled in interstate commerce.

(Plea Agreement [R. 21] at 2-4 ¶ 5.) During the plea colloquy, defendant admitted that these facts were substantially correct. (Plea Hr'g Tr. [R. 26] at 4:10-11.) I ordered a pre-sentence report ("PSR"), which was disclosed to the parties on or about February 16, 2016 (Pre-sentence Report [R. 24] at 1), and set the case for sentencing on March 17, 2016, later adjourned to March 30, 2016 at defendant's request.

On March 25, 2016, defendant filed a motion to withdraw his plea, claiming that it was not entered knowingly and intelligently because his counsel miscalculated the advisory sentencing guideline range; he further claimed that new information had come to light which would have changed his decision to plead guilty. (Mot. to Withdraw Guilty Plea [R. 27] at 1-3.) In a supporting affidavit, defense counsel elaborated on the bases for the motion.

Counsel averred that he met with defendant on February 23, 2016, to the review the

2

PSR, which contained a higher guideline calculation than the parties had anticipated. (Aff. in Support of Mot. [R. 31] at 2 ¶ 5.) Specifically, they had failed to account for defendant's prior conviction for assault by a prisoner, which not only increased the criminal history score but also the base offense level.[1] (R. 27 at 2-3.) Counsel averred that, upon learning this information, defendant immediately inquired about withdrawing his plea. (R. 31 at 2 ¶ 5.) On February 29, 2016, counsel requested a two-week sentencing adjournment to allow defendant additional time to consider his alternatives, and the court continued the sentencing to March 30, 2016. (Id. at 2 ¶ 6.)

On March 3, 2016, counsel met with defendant to discuss his options, and defendant told counsel he had new information which, if previously known, would have led him to try this case. Specifically, defendant conveyed that he had just discovered that the person previously believed to be the CI was not, in fact, the CI. Further, defendant believed he had discovered by a chance encounter who the CI actually was and that this person's credibility was subject to impeachment. (Id. at 2 ¶ 7.) Based on this information, in addition to the surprise of the higher guidelines, defendant indicated that he wanted to withdraw his plea. (Id. at 2-3 ¶ 7.)

---

[1] The PSR deemed this conviction a "crime of violence," increasing the base offense level from 20 to 24 under U.S.S.G. § 2K2.1(a)(2). (R. 24 at 8 ¶ 20.) Defendant filed an objection to the PSR's designation of this offense as a crime of violence. From the objections and the plea agreement, it appears the parties thought the base offense level would be 22 under U.S.S.G. § 2K2.1(a)(3), which applies when the defendant has one predicate conviction for a drug trafficking offense or a crime of violence and the firearm is capable of accepting a large capacity magazine. Although the PSR references the nature of the firearm, it does not impose the base level of 26 that applies to defendants with two predicate convictions who possess these types of guns. U.S.S.G. § 2K2.1(a)(1); see also U.S.S.G. § 2K2.1 cmt. n.2. Rather, it sets the base level at 24 under § 2K2.1(a)(2). Counsel's alleged underestimate thus appears to amount to 2 offense levels. In its response to the PSR objections, the government indicated that it will recommend a sentence within or below the range the parties expected. (R. 24-1 at 12.) Given the posture of the case, I have not yet addressed the objections.

3

On March 16, 2016, counsel met with Sean Rhodes, the lessee of the apartment from which the police seized the contraband in this case and the person previously believed to be the CI. At this meeting, Rhodes indicated that he was willing to testify regarding when defendant stopped residing at the apartment and about others who had access to the apartment prior to the search warrant execution. Counsel explained that this testimony had potential evidentiary value because Rhodes could offer testimony only otherwise available from defendant himself, thus alleviating any strategical need for defendant to testify and expose himself to cross-examination. Because defendant originally thought Rhodes was the CI who had tipped off the police, calling him as a witness was not previously thought to be an option.[2] (Id. at 3 ¶ 9.)

On review of the motion, I set the case for a hearing. At the hearing, Rhodes testified that for a period of six to seven months in 2013-14, defendant, a childhood friend, lived with him in the two-bedroom Appleton Avenue apartment he leased, splitting the rent. Rhodes indicated that defendant moved out a few weeks before the police raided the apartment. Rhodes explained that defendant's "baby mama" came over to the apartment on several occasions, causing trouble; the police were called and the landlord notified. Rhodes testified that defendant left to get away from this trouble.

Rhodes testified that between the time defendant left and the date the police raided the apartment, he allowed several other men to use defendant's bedroom to party with girls and smoke marijuana, charging them $40. Rhodes said that at times he gave these men a key to

---

[2]Counsel averred that Rhodes was believed to be the CI because his name was redacted from several pieces of discovery, he was the renter of the apartment where all the contraband was found, and he was not charged even though contraband was also found in the common bathroom. (Id. at 3 n.1.)

4

use the apartment when he wasn't there.

Rhodes testified that the police visited the apartment on April 14, 2014, a few days before the raid; defendant had just left the apartment when they arrived. Defendant was also there just before the police executed the search warrant on April 17, 2014. Rhodes testified that when defendant "moved out" he grabbed some clothes and left, indicating he would be back for the rest of his belongings. Defendant returned to the apartment several times thereafter. Rhodes did not know if defendant reclaimed the rest of his things. Rhodes also testified that he did not know to whom the contraband found in defendant's room belonged.[3]

## II. DISCUSSION

A defendant has no absolute right to withdraw his plea; rather, the decision to permit withdrawal is committed to the sound discretion of the district court. United States v. Ranum, 96 F.3d 1020, 1025 (7th Cir. 1996). The court may allow a defendant to withdraw his plea prior to sentencing if he can show a "fair and just reason." Fed. R. Crim. P. 11(d)(2). The burden is on the defendant to demonstrate a fair and just reason for such withdrawal. United States v. Milquette, 214 F.3d 859, 861 (7th Cir. 2000).

The Seventh Circuit has recognized several fair and just reasons for withdrawing a plea, including: the plea was not made voluntarily and knowingly, actual innocence, and legal innocence. United States v. Mays, 593 F.3d 603, 607 (7th Cir. 2010). "In examining a motion to withdraw a guilty plea, the district court has three options: it can permit the withdrawal of the plea, conduct an evidentiary hearing, or deny the motion with an explanation as to why the evidence is insufficient or incredible." United States v. Rinaldi, 461 F.3d 922, 927 (7th Cir.

---

[3]Defendant did not testify at the hearing.

5

2006).

The court accords statements made at the Rule 11 hearing a presumption of verity, so a defendant who files a motion to withdraw his plea on the ground that his plea was not knowing and voluntary, contrary to his assertions at the Rule 11 proceeding, faces a heavy burden of persuasion. United States v. Standiford, 148 F.3d 864, 868-69 (7th Cir. 1998). In the present case, defendant makes no claim based on the inadequacy of the plea colloquy, and review of the transcript reveals substantial compliance with Rule 11. Defendant also confirmed during the colloquy that he had reviewed the plea agreement (R. 26 at 4:9-12), which further elaborates on the nature of the charges, the penalties defendant faces, and the rights he relinquishes by pleading guilty. See United States v. Akinsola, 105 F.3d 331, 333-34 (7th Cir. 1997) (relying on the elaborate plea agreement to deny plea withdrawal).

Defendant does claim that his plea was not entered intelligently because his counsel miscalculated the guideline range. However, the fact that a defendant underestimated his sentence when entering his plea is ordinarily not a fair and just reason to allow him to withdraw the plea. United States v. Weathington, 507 F.3d 1068, 1071 (7th Cir. 2007); United States v. Gilliam, 255 F.3d 428, 434 (7th Cir. 2001); see, e.g., United States v. Knorr, 942 F.2d 1217, 1220 (7th Cir. 1991) (holding that a defendant's misunderstanding that he might be subject to a guideline enhancement based on role in the offense did not provide a fair and just reason to allow plea withdrawal). Similarly, defense counsel's mere inaccurate prediction of a potential sentence generally does not warrant the withdrawal of a guilty plea. United States v. Howard, 341 F.3d 620, 622 (7th Cir. 2003); see also United States v. Fuller, 312 F.3d 287, 293 (7th Cir. 2002). Further, in the present case, I advised defendant that I could sentence him to any term within the statutory limit of 10 years, that the guidelines were no longer binding, and that if he

6

found the sentence too harsh he would still be bound by his plea and would not be able to withdraw it. (R. 26 at 4.) Thus, defendant could not have entered the plea based on a misapprehension about his sentencing exposure. See Knorr, 942 F.2d at 1220 (denying plea withdrawal where the judge provided similar admonitions). Finally, I have yet to determine whether the prior offense at issue is, in fact, a crime of violence. As indicated above, defendant has objected to the PSR's recommendation on this point, and in its response to the PSR objections the government says it will recommend a sentence within or below the range the parties expected. For all of these reasons, I cannot conclude that counsel's possible 2-level underestimate of the offense level constitutes a fair and just reason to withdraw the plea.

Defendant also seeks plea withdrawal based on newly discovered evidence, which he says would have changed his decision to plead guilty. See United States v. Thompson-Riviere, 561 F.3d 345 (4th Cir. 2009) (allowing plea withdrawal based on newly obtained DNA evidence suggesting legal innocence of the offense); United States v. Garcia, 401 F.3d 1008 (9th Cir. 2005) (allowing withdrawal of Alford guilty plea based on discovery of a new witness whose statement raised serious questions about the defendant's involvement in the illegal activity). However, the Seventh Circuit has consistently held that a defendant is not entitled to withdraw his plea because he misapprehended the strength of the government's case or, on reevaluation, can conceive of an arguable defense. See, e.g., United States v. Bryant, 557 F.3d 489, 496 (7th Cir. 2009); United States v. Underwood, 174 F.3d 850, 853-54 (7th Cir. 1999); United States v. Silva, 122 F.3d 412, 415 (7th Cir. 1997); see also United States v. Hodges, 259 F.3d 655, 661 (7th Cir. 2001) (holding that a defendant's bare protestations of innocence – especially after a knowing and voluntary guilty plea in a thorough Rule 11 colloquy – will not suffice, regardless of how swiftly they are made; the defendant must proffer some

credible evidence). The Seventh Circuit has further held that the court should consider whether the proffered reasons are consistent with the evidence introduced at the Rule 11 hearing. United States v. Groll, 992 F.2d 755, 758 (7th Cir. 1993). A defendant who presents a reason for withdrawing his plea that contradicts the answers he gave at a Rule 11 hearing faces an uphill battle in persuading the court that his purported reason for withdrawing his plea is fair and just. Id.

Assuming, arguendo, that Rhodes was unavailable as a witness prior to defendant's plea, his testimony nevertheless fails to provide a fair and just reason for withdrawal. Rhodes testified that a few weeks before the police executed the search warrant defendant took some of his clothes and left the apartment, apparently to avoid the chaos caused by his child's mother. However, according to Rhodes's testimony, defendant had not fully moved out; he left his other belongings in the apartment, and he continued to come back to it, including on both days the police visited the apartment in April 2014. Thus, Rhodes's testimony hardly severs defendant's connection to the apartment. Cf. Garcia, 401 F.3d at 1010 (allowing plea withdrawal where new witness said the defendant never lived at the house where police found drugs and guns). Moreover, during the plea colloquy, defendant admitted that he told the police, on April 17, 2014, the day of the search, that he "stayed" at the apartment. Defendant further admitted during the colloquy that the police found identifiers linking him to the apartment while searching it. Defendant does not seek to retract these admissions.

Rhodes testified that he allowed other people to use defendant's room to party; presumably, such testimony would have allowed defendant to argue at trial that someone else may have put the contraband in his bedroom. However, during the plea colloquy, defendant admitted that the police found his fingerprint on the bag containing the contraband, and that

8

he possessed the ammunition and marijuana found in his bedroom. Rhodes was unable to say that the drugs and ammunition found in defendant's bedroom belonged to anyone else. Nor did he say that others used the closet in which police found the bag.

Finally, while defendant may have deemed Rhodes unavailable as a witness prior to entering the plea, he was obviously aware of this potential defense – that he had moved out of the apartment prior to the search – when he decided to plead guilty. See Groll, 992 F.2d at 758 (holding that the district court is generally justified in holding the defendant to his plea when he was aware of the reasons supporting withdrawal at the time of the plea). The record instead shows that defendant's primary motive for seeking to withdraw his plea is the higher guideline range recommended in the PSR.[4] See Underwood, 174 F.3d at 853 (denying withdrawal motion motivated by dissatisfaction with recommended range in PSR). As indicated above, misapprehension about the applicable sentencing guideline range rarely supports plea withdrawal; in the present case, any slight miscalculation may ultimately have no impact. Thus, while defendant may have found the higher range an unpleasant surprise, this provides no basis for reevaluation of his trial prospects. See id. at 854.[5]

---

[4]As discussed in note 2, supra, defendant surmised that Rhodes must have been the CI because his name was redacted from certain documents, and he was not charged based on the contraband found in his apartment. However, defendant makes no claim that he unsuccessfully attempted to discover the CI's identity before pleading guilty; nor does he claim that he could not find Rhodes, his friend of 20-25 years, prior to the plea. This suggests that defendant's decision to locate and talk to Rhodes was motivated by the PSR's guideline calculations.

[5]In the supporting affidavit, counsel averred that defendant had learned who the CI actually was, and that his person's credibility was subject to impeachment. Defendant developed no argument regarding any trial testimony the CI might give or how his/her credibility could be attacked, and this case is not before the court on a motion to suppress the evidence recovered pursuant to the search warrant. Cf. McMann v. Richardson, 397 U.S. 759, 769-71 (1970) (holding that guilty plea may not be attacked on the ground that counsel may have

9

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to withdraw guilty plea (R. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that this matter is scheduled for **SENTENCING** on **Thursday, July 14, 2016, at 1:30 p.m.** The parties shall file any sentencing motions, memoranda, or other supporting material on or before **July 7, 2016**.

Dated at Milwaukee, Wisconsin, this 7th day of June, 2016.

/s Lynn Adelman
LYNN ADELMAN
District Judge

---

misjudged the admissibility of the defendant's confession). Nor did defendant present any evidence on this point at the hearing. I need not address it further.

10